UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MITCHELL SPROESSIG,

    Plaintiff,

v.

JAMES BLESSMAN, *et al.*,

    Defendants.

_____/

Case No. 1:19-cv-693

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

    This is a *pro se* civil rights action brought pursuant to 42 U.S.C § 1983 by Mitchell Sproessig, a state prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff's claim is against the MDOC's Assistant Chief Medical Officer ("ACMO"). In his original complaint, plaintiff sued James Blessman and Randy Lindstrom. *See* Compl. (ECF No. 1). Plaintiff amended the complaint to sue one defendant, Keith Papendick, M.D. (ECF No. 13). This resulted in the dismissal of Blessman and Lindstrom. *See* Orders (ECF Nos. 12 and 14). This matter is now before the Court on Dr. Papendick's motion for summary judgment for failing to exhaust administrative remedies (ECF No. 15).

    **I.**     **Background**

    Plaintiff alleged that since 2010, he has complained to MDOC health care staff about a "hernia problem" but that the MDOC "has not had any medical treatment" to correct it. Amend. Compl. (ECF No. 13, PageID.67). The amended complaint involves plaintiff's medical care in 2018 and 2019 at the MDOC's Lakeland Correctional Facility (LCF). "On January 24,

1

2018, Doctor Sudhir requested that Plaintiff have surgery to correct the problems caused by the 'hernia'." *Id*. at PageId.68.  On August 3, 2018, plaintiff requested medical treatment from the LCF health care department.  Plaintiff alleged that "[h]e waited for (10) days but never received any hernia treatment." *Id*. at PageID.67.  On August 16, 2018, plaintiff submitted a grievance against health care staff for the long delay. *Id*.  Nothing was done for plaintiff's surgery until February 12, 2019, when he inquired about the surgery and was informed that the surgery had been denied by the ACMO. *Id*. at PageID.68.  However, a health care employee (apparently the doctor who informed plaintiff about the decision) refused to provide the name of the ACMO. *Id*.

Plaintiff's original complaint named former defendant Blessman as the ACMO. *Id*.  Plaintiff amended the complaint after learning during the Court's mediation process that Dr. Papendick was the ACMO "who denied him surgery." *Id*.  In his amended complaint, plaintiff alleged that he filed a grievance which identified the ACMO "as the person who refused to provide him treatment by the surgery denial." *Id*.  Plaintiff alleged that "[t]he ACMO did not examine, or interview Plaintiff to determine whether or not surgery was needed as prescribed by Doctor Bhamini Sudhir in January 2019." *Id*.  Based on the allegations, Dr. Papendick acted sometime between January 24, 2018, and February 12, 2019. *Id.*

Plaintiff's amended complaint contains three counts.  In Count One, plaintiff alleged that Dr. Papendick "completely ignored the medical request without diagnosing, examining, or interviewing Plaintiff before denying him medical treatment." *Id*. at PageID.12.  The Court construes this claim as one for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

2

In Count Two, plaintiff alleged that Dr. Papendick's act of denying the medical treatment and request for surgery "constitutes a denial of equal protection under the law by selectively applying MDOC policy, customs, or procedures of the medical health care policy, PD-04.01.100, to prisoners who had hernias but approved surgeries [sic] prisoners for other medical ailments, constitutes deliberate indifference to Plaintiff's serious medical needs as prescribed by Doctor Sudhir on January 24, 2019, in violation of Plaintiff's Eight Amendment right to US Constitution."  *Id*. at PageID.69.

In Count Three, plaintiff alleged that "[t]he blatant acts and omissions, as well as the acts of commissions by Defendant Papendick" violated his constitutional rights under the Eighth Amendment and M.C.L. § 19.142 ("Conduct prohibited on public property; penalties").  *Id*.  Plaintiff's claim under M.C.L. § 19.142 is frivolous.  *See Lopp v. Washington*, No. 1:19-cv-540, 2019 WL 4161190 at *4 (W.D. Mich. Sept. 3, 2019) ("Plaintiff [prisoner] lacks both standing and legal authority to enforce Mich. Comp. Laws § 19.142. A private citizen 'lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'  *Diamond v. Charles*, 476 U.S. 54, 64 (1986)[.]").  While defendant does not address plaintiff's claim under M.C.L. § 19.142, the Court should dismiss this claim *sua sponte*.  *See* § III, *infra*.

Plaintiff seeks compensatory damages in excess of $10,000.00, punitive damages in excess of $10,000.00, and other relief. *Id*. at PageID.70.

## II. Defendant's motion for summary judgment

### A. Legal standard for summary judgment

Defendant Dr. Papendick seeks summary judgment because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.  "The court shall grant summary

3

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42

4

U.S.C. § 1983 "or any other Federal law" must first exhaust available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

      **2.**      **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).[1] A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable

---

[1] Plaintiff filed his grievance on February 17, 2019. While the MDOC revised the greivance policy on March 18, 2019, the MDOC processed the grievance under the 2007 version.

5

issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id*. at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id*. at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id*. at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id*. at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id*. at ¶ FF.

### 3. Grievance LCF-19-02-193-28E ("193")

Dr. Papendick points out that plaintiff filed one grievance against the "ACMO" for denying the hernia surgery, that being Grievance 193. Plaintiff filed the grievance on February 17, 2019, listing an incident date of February 12, 2019. Grievance 193 (ECF No. 15-1, PageID.91). The grievance stated that Dr. Sudhir requested the hernia surgery on January 24, 2018, but plaintiff did not learn that the ACMO denied the surgery until February 12, 2019. *Id*. Plaintiff complained that he was denied necessary medical treatment which violated his "constitutional right to equal treatment." *Id*. Plaintiff proposed to resolve the situation by having the MDOC overrule the ACMO and approve the surgery. *Id*. While plaintiff stated that

6

"retaliation is prohibited" and "grounds for litigation under 42 USC § 1983," he made no claim for retaliation. *Id*.

The MDOC construed the grievance as involving the denial of the request for hernia surgery by the ACMO. *See* Step I response (PageID.92). The MDOC stated that the ACMO reviewed plaintiff's case, determined that plaintiff did not meet the criteria for a surgical consult, and that "[p]er the experience and expertise of the Medical Provider, a plan has been put in place for [plaintiff's] treatment and medical needs." *Id*. The MDOC denied the grievance, stating "[y]ou have and will continue to receive all necessary medical treatment." *Id*. Respondent Mark Butler signed the response on March 22, 2019, and reviewer Christine Pigg signed it on March 26, 2019. *Id*. The MDOC returned the response to plaintiff on March 29, 2019. *Id*. at PageID.91.

The MDOC's response to the Step I grievance was untimely. Policy Directive 03.02.130 provides in pertinent part,

> If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due. . . .  The due date shall be within 15 business days after receipt of the grievance unless an extension is granted pursuant to Paragraph S. If the issue is of an emergent nature, the Grievance Coordinator may order a Step I response within two business days.

Policy Directive 03.02.130 ¶ X.  Here, the Grievance Coordinator received the grievance on Monday, February 25, 2019.  *See* Grievance 193 at PageID.91.  Pursuant to ¶ X, the MDOC's response was due on Monday, March 18, 2019.  However, the MDOC did not complete the response until March 26, 2019, and did not return the response to plaintiff until March 29, 2019.

Plaintiff requested a Grievance Appeal Form which included the following instruction:

7

> If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: <u>GC</u> by <u>4-5-2019</u>. If it is not submitted by this date, it will be considered ~~terminated~~ untimely.

Grievance Appeal Form (PageID.90) (strikeout in original). Plaintiff dated the Step II appeal April 4, 2019. *Id*.

The Grievance Coordinator (sometimes referred to as "GC") received the Step II appeal on 4-10-19. *Id*. The appeal was "recoded" and rejected for being filed outside of the time allotted in Policy Directive 03.02.130 ¶ BB, which provides as follows:

> <u>A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response.</u> To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved <u>within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due</u>, including any extensions. If the office being grieved does not have a designated Grievance Coordinator, the grievant is to send the grievance to the Step II Grievance Coordinator for the facility in which s/he is housed or appropriate field office for processing.

Policy Directive 03.02.130 ¶ BB (emphasis added).

LCF Grievance Coordinator J. Rohrig rejected the Step II appeal for the following reasons:

> Your Step II grievance LCF-19-02-0193-12D2 is recoded and rejected for being filed outside the allotted time frame set forth in PD 03.02.130, paragraph BB which reflects in part the grievant must request and return an appeal within 10 business days after the Step I response is received or if no response was received by due date. <u>The Step I response was due to you 3-18-19. You requested an appeal 4-3-19 and it was sent to you on this date</u>.
>
> <u>Your delay in requesting and properly returning the Step II appeal, as set forth in policy when no Step I response is received by the due date, has caused it to be filed untimely.</u> This rejection is implemented in accordance with paragraph CC of this policy. Utilize ID# LCF-19-02-0193-28E when referencing this grievance in the future.

8

Step II Rejection (PageID.93) (emphasis added). Based on ¶ BB, if the Step I response was due on Monday, March 18, 2019, then plaintiff had to request and file a Step II appeal by Monday, April 1, 2019.

At the Step III appeal, plaintiff contested the rejection at Step II stating: that he did not receive the Step I response until March 28, 2019 [sic]; that he requested a Grievance Appeal Form on April 2, 2019; that he received the form on April 4, 2019; that the form had a due date of April 5, 2019; and that he filed the appeal on April 4, 2019. *See* Step III Appeal (PageID.90). Richard D. Russell (Manager of the Grievance Section) reviewed the Step III appeal and upheld the rejection. Step III Grievance Decision (PageID.89).

### 4.    Discussion

Dr. Papendick contends that plaintiff did not properly exhaust his administrative remedies because the MDOC rejected his grievance at Step II and did not provide a merits-based response at all steps. *See Cook v. Caruso*, 531 Fed. Appx. 554, 563 (6th Cir. 2013). Plaintiff contends that circumstances rendered exhaustion effectively unavailable because, among other things, the MDOC improperly screened his grievance, the MDOC changed the identifier code, and he did not receive the Step I response until March 29, 2019. As discussed, ¶ BB contains two different dates for filing a Step II appeal, *i.e.*, 10 business days after the prisoner's receipt of a timely Step I response or 10 business days after the date the response was due. Because plaintiff did not receive a timely Step I response, ¶ BB required him to send the completed Step II appeal within 10 business days of the date that the MDOC should have sent him the response, in this case April 1, 2019. As discussed, plaintiff admits that he did not file a Step II appeal until April 4, 2019.

Based on this timeline, it appears that the MDOC could reject plaintiff's Step II appeal as untimely under ¶ BB. However, that is not the end of the story. As discussed, the MDOC waived the ¶ BB timeline by advising plaintiff that his appeal "should be directed to: <u>GC</u> by <u>4-5-2019.</u>" *See* Grievance Appeal Form at PageID.90. While the grievance coordinator did not receive the Step II appeal until April 10, 2019, the operative date for exhaustion is when the prisoner sent the appeal, not when the MDOC received it. *See* Policy Directive 03.02.130 ¶ S ("Grievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant"). Here, plaintiff stated in an uncontested affidavit that "I had a fellow inmate type up a request for a step two appeal form from the coordinator's office which I received it [sic] on April 3, with a due date of April 5, and it was filled out and placed in the prison mailbox on April 4, 2019[.]" Sproessig Aff. (ECF No 16-2, PageID.150).

Based on this record, plaintiff timely filed his Step II appeal before the extended due date of April 5, 2019. Nevertheless, the MDOC rejected the Step II appeal as untimely under ¶ BB. In taking this action, the MDOC violated its own rule by failing to provide plaintiff with a timely Step I response[2], which left plaintiff with something of a Hobson's choice: file an appeal to a non-existent grievance response[3] or wait in the hope that the MDOC filed a response before his appellate window expired on April 1, 2019. Plaintiff opted to wait. He received an untimely

---

[2] The Court notes that if the MDOC could not address plaintiff's Step I grievance in a timely manner, then the respondent could have requested an extension to respond as allowed under Policy Directive 03.02.130 ¶ X ("[t]he due date [for a Step I grievance response] shall be within 15 business days after receipt of the grievance unless an extension is granted pursuant to Paragraph S").

[3] As discussed, ¶ BB requires that a prisoner file a Step II Appeal within 10 business days after the date the response was due. The Court questions how such a requirement serves to fairly resolve a prisoner's grievance when as here, the MDOC did not file a timely response to the grievance. How can a prisoner prepare an appeal to the MDOC's Step I grievance response before the MDOC issues that response?

Step I response which gave him a short extension and acted promptly to file his appeal within that extension. Even though plaintiff followed the filing instructions, the MDOC rejected his Step II appeal as untimely. By rejecting the appeal, the MDOC effectively prevented plaintiff from exhausting his claim against Dr. Papendick. In this instance, the MDOC's application of the exhaustion rules was not reasonable. *See Ross v. Blake*, -- U.S. --, 136 S. Ct. 1850, 1859 (2016) (when rules for exhaustion are so confusing that no reasonable prisoner can use them, then exhaustion is no longer available). Accordingly, defendant's motion for summary judgment should be denied and his claim deemed exhausted for purposes of this lawsuit.

### III. Plaintiff's claim under M.C.L. § 19.142

While defendant's motion does not seek dismissal of plaintiff's claim brought under M.C.L. § 19.142, the Court can *sua sponte* dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides in pertinent part that "the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal . . . (ii) fails to state a claim on which relief may be granted[.]" In reviewing plaintiff's claim, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). *See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (the *Iqbal* plausibility standard applies when dismissing a claim under § 1915(e)(2)(B)(ii)). As discussed in § I, *supra*, plaintiff does not have standing to sue Dr. Papendick for an alleged violation of M.C.L. § 19.142. *See Lopp*, 2019 WL

11

4161190 at *4. Accordingly, the Court should dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Dr. Keith Papendick's motion for summary judgment based on failure to exhaust (ECF No. 15) be **DENIED**, and that plaintiff's claim be deemed exhausted for purposes of this lawsuit.

I further recommend that pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court **DISMISS** plaintiff's claim that Dr. Keith Papendick violated M.C.L. § 19.142.

Dated:  June 21, 2021                            /s/ Ray Kent
                                                 RAY KENT
                                                 United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).