UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MITCHELL SPROESSIG,

    Plaintiff,

v.

JAMES BLESSMAN, *et al.*,

    Defendants.

_____/

Case No. 1:19-cv-693

Hon. Jane M. Beckering

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C § 1983 by Mitchell Sproessig (referred to as "plaintiff"), a state prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff's amended complaint (ECF No. 13) named one defendant, Keith Papendick, M.D. ("Dr. Papendick"). This matter is now before the Court on Dr. Papendick's motion for summary judgment (ECF No. 32).

**I.     Background**

Plaintiff's original complaint named two other defendants, James Blessman and Randy Lindstrom. See Compl. (ECF No. 1); Amended Compl. (ECF No. 13, PageID.66). Sproessig amended the complaint after learning during the Court's mediation process that defendant Dr. Papendick was the "true Defendant". Amend. Compl. at PageID.66. In his amended complaint, plaintiff alleged that since 2010, he has complained to MDOC health care staff about a "hernia problem" but that the MDOC "has not had any medical treatment" to correct

1

it. *Id*. at PageID.67. The claims in this lawsuit involve plaintiff's medical care in 2018 and 2019 at the MDOC's Lakeland Correctional Facility (LCF).

On August 3, 2018, plaintiff requested medical treatment from the LCF health care department and that "[h]e waited for (10) days but never received any hernia treatment." *Id*. at PageID. 67. On August 16, 2018, plaintiff submitted a grievance against health care staff for the long delay. *Id*.

Some months later, "[o]n January 24, [2019], Doctor Sudhir requested that Plaintiff have surgery to correct the problems caused by the 'hernia'." *Id*. at PageID.68.[1] On February 12, 2019, plaintiff inquired about the surgery and was informed that it had been denied by the ACMO (Assistant Chief Medical Officer). *Id*. At that time, a health care employee refused to provide the name of the ACMO; plaintiff later learned that the ACMO was Dr. Papendick. *Id*. Plaintiff alleged that "[t]he ACMO did not examine, or interview Plaintiff to determine whether or not surgery was needed as prescribed by Doctor Bhamini Sudhir in January 2019." *Id*.

The amended complaint contains three counts. In Count One, plaintiff alleged that Dr. Papendick "denied the medical surgery requested by Doctor Sudhir to correct the 'hernia problem' to stop the pain and suffering, but Defendant Papendick completely ignored the medical request without diagnosing, examining, or interviewing Plaintiff before denying him medical treatment." *Id*. at PageID.68. The Court construed this claim as one for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

In Count Two, plaintiff alleged that Dr. Papendick's act of denying the medical treatment and request for surgery "constitutes a denial of equal protection under the law by

---

[1] The Court notes that plaintiff inadvertently listed the date of the request as "January 24, 2018." *See* PageID.68.

2

selectively applying MDOC policy, customs, or procedures of the medical health care policy, PD-04.01.100, to prisoners who had hernias but approved surgeries [sic] prisoners for other medical ailments, constitutes deliberate indifference to Plaintiff's serious medical needs as prescribed by Doctor Sudhir on January 24, 2019, in violation of Plaintiff's Eight Amendment right to US Constitution." *Id*. at PageID.69.  This claim involves a separate Fourteenth Amendment equal protection claim and the Eighth Amendment claim.

In Count Three, plaintiff alleged that "[t]he blatant acts and omissions, as well as the acts of commissions by Defendant Papendick" violated his constitutional rights under the Eighth Amendment and M.C.L. § 19.142 ("Conduct prohibited on public property; penalties"). *Id*.  This Count involves a separate state law claim and the Eighth Amendment claim.

Plaintiff seeks compensatory damages in excess of $10,000.00, punitive damages in excess of $10,000.00, and other relief.  *Id*. at PageID.70.

The Court dismissed the state law claim in Count Three.  *See* Order (ECF No. 27, PageID.199).  Plaintiff's remaining claims are the Eighth Amendment claim alleged Counts One, Two and Three, and the Fourteenth Amendment claim alleged in Count Two.  Dr. Papendick seeks summary judgment on the remaining claims.

## II.    Defendant's motion for summary judgment

### A.    Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

3

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.  Discussion

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

### 1. Eighth Amendment claim in Counts One, Two and Three

In these three counts, plaintiff alleged that Dr. Papendick acted with deliberate indifference to a serious medical need in violation of the Eighth Amendment. It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id*. at 835. "It is obduracy

5

and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734, F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

Plaintiff's lawsuit involves a single medical decision made by Dr. Papendick. On January 24, 2019, non-party Connie McCool completed a request for a "consult" and "surgery". Medical Records (ECF No. 34, PageID.321). The request appears to have been made on behalf of the site medical provider, Dr. Sudhir. *Id*. at PageID.322. Plaintiff's signs and symptoms presented were listed as follows:

> Patient with ventral hernia, c/o constant pain and discomfort. Patient states that he has had for years and now it is getting worse, he states he is unable to do any exercise or any activities which needs him to stand for long time or any bending activities.
>
> Exam--Ventral hernia, measuring about 10cm per the RN, even with patient laying back the hernia is significantly enlarged and doesnot [sic] spontaneously reduce.
>
> Patient seen on telemed.

*Id*. at PageID.321.

Dr. Papendick reviewed the request on January 28, 2019, stating:

> APT: Medical necessity not demonstrated at this time. Spontaneous reduction is not criteria for hernia consult or repair.

*Id*. at PageID.322. On January 29, 2019, the request was denied, because the criteria was not met. *Id*.

At the time, Dr. Papendick held the position of Outpatient Utilization Manager Medical Director. Papendick Aff. (ECF No. 32-2, PageID.228). In this position, Dr. Papendick

6

was not involved in the day-to-day medical care of inmates. *Id*. Rather his involvement with patient care included requests for medical services and consultations that cannot be provided onsite at the correctional facility. *Id*. at PageID.228-229.

> Dr. Papendick explained his decision in this case as follows:
>
> 4. In making recommendations, I review a medical provider's healthcare request and the associated medical records either identified by the medical provider or associated with the out-patient healthcare request based on the information provided to me by the medical provider.
>
> 5. Based on my review of the information provided to me by the medical provider and in the exercise of my informed medical judgment, I make recommendations regarding the appropriate course of treatment, which may be approving the treatment requested or recommending an alternative treatment plan. My recommendations are based on evidenced-based medicine and medical necessity.
>
> 6. If a provider disagrees with my recommendation, there is an appeal process which involves further discussion with me, the Regional Medical Director, and the State Medical Director. If the provider is still dissatisfied, he or she can discuss further treatment options with the MDOC.
>
> 7. On January 29, 2019, Mr. Sproessig's medical provider submitted a 407 healthcare request surgery consultation for a ventral hernia that did not spontaneously reduce. Plaintiff had a "significantly enlarged" ventral hernia which did not spontaneously reduce. I reviewed the 407 request and relevant medical records and determined that spontaneous reduction was not a criterion for hernia consult or repair. I relied on InterQual data to determine Plaintiff did not qualify for a surgical consultation at the time of the request.
>
> 8.     InterQual data is an evidence-based support solution that assists medical providers in making clinically appropriate medical utilization decisions.
>
> 9.     This was my only and last involvement in Mr. Sproessig's care during the relevant time period.

*Id*. at PageID.229-230.

Dr. Papendick has demonstrated that he denied the requested consult and surgery based on his medical judgment. The doctor's denial of a consult and surgery does not constitute an Eighth Amendment violation. As this Court previously explained,

> "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976). Courts have determined that a physician's decision to treat a prisoner's hernia, including the decision to perform corrective surgery, is a matter of medical judgment which does not give rise to a federal constitutional violation. *See, e.g., Winslow v. Prison Health Services*, 406 Fed. Appx. 671 (3rd Cir. 2011) (prison doctors did not act with deliberate indifference to prisoner's medical needs by deciding to forego surgery in treatment of prisoner's hernia, even though doctors considered the cost of the procedure in declining surgery, where the prisoner's hernia was not strangulated or incarcerated and the doctor stated that the standard treatment for an inguinal hernia was non-surgical, and that with proper treatment the hernia could heal without surgical intervention); *Palazon v. Secretary for Department of Corrections*, 361 Fed. Appx. 88, 89-90 (11th Cir. 2010) (where medical records indicated that a prisoner's hernia was treatable without surgery, defendant state prison officials were not deliberately indifferent for making decision not to perform surgery; this case presented a classic "matter of medical judgment" which is not an appropriate basis for a federal Eighth Amendment claim).

*Bradley v. Hallsworth*, No. 1:09-cv-1070, 2011 WL 4404116 at *8 (Aug. 19, 2011), R&R adopted, 2011 WL 4404080 (W.D. Mich. Sept. 21, 2011). Accordingly, Dr. Papendick's motion for summary judgment should be granted as to the Eighth Amendment claim alleged in Counts One, Two and Three.

### 2. Fourteenth Amendment claim in Count Two

The gist of plaintiff's claim is that Dr. Papendick's denial of a request for hernia surgery denied plaintiff equal protection under the law by selectively applying the MDOC's health care policy. The Fourteenth Amendment provides that no State "shall . . . deny to any person within its jurisdiction the equal protection of the laws."  "The purpose of the equal

protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County, Nebraska*, 260 U.S. 441, 445 (1923) (internal quotation marks omitted). In order to maintain a Fourteenth Amendment Equal Protection claim, the plaintiff must prove that he is a member of a protected class and that a state actor purposefully discriminated against him because of his class membership. *See Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000). "To state an equal protection claim in the prison context, 'a plaintiff must allege he was treated differently than other similarly situated prisoners.'" *Wilbon v. Michigan Department of Corrections*, No. 13-14404, 2015 WL 1004707 at *4 (E.D. Mich. March 6, 2015) (quoting *Lee v. Pauldine*, No. 12–077, 2013 WL 65111 at *6 (S.D. Ohio Jan. 4, 2013) (citations omitted)).

Here, it appears that the plaintiff's purported protected class consists of MDOC prisoners with hernias. Plaintiff's allegations and evidence relate to Dr. Papendick's evaluation of his hernia and the doctor's denial of surgery to treat the hernia. In his response, plaintiff "asserts that he was treated differently and this is grounds for an equal protection claim under the treatment analysis under the 14th. Amendment" and that "[a]though Papendick is not the state [sic], his supervisory authority over Doctor Sudhir should be considered authoritative for purpose of the equal protection clause where he treated certain prisoners differently, -- to save money." Plaintiff's Response (ECF No. 37, PageID.343). Nothing in the record demonstrates that MDOC prisoners with hernias are treated differently than other "similarly situated" MDOC prisoners.[2] Plaintiff's conclusory statements do not establish the existence of an equal protection claim.

---

[2] In this regard, the Court notes that plaintiff does not identify the similarly situated prisoners.

"Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). Accordingly, Dr. Papendick's motion for summary judgment should be granted as to the Fourteenth Amendment claim in Count Two.

### III.   Recommendation

For the reasons set forth above, I respectfully recommend that defendant Dr. Papendick's motion for summary judgment (ECF No. 32) be **GRANTED** and that this action be terminated.

Dated:   June 28, 2022                                  /s/ Ray Kent
                                                        RAY KENT
                                                        United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).